UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DAVID SHEARON,                                        :
                                                      :
                        Plaintiff,                    :
                                                      :        MEMORANDUM AND
        -against-                                     :        ORDER
                                                      :
COMFORT TECH MECHANICAL CO., INC.,                    :        12-CV-96
                                                      :        (Kuntz, J.)
                        Defendant.                    :
                                                      :
-------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge**

      David Shearon ("Plaintiff") commenced this action against his former employer, Comfort

Tech Mechanical Co. ("CTM" or "Defendant"), on January 9, 2012, alleging three causes of

action for disability discrimination in violation of (1) the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101; (2) the New York State Human Rights Law ("NYHRL"), N.Y.

Exec. Law § 290; and (3) the New York City Human Rights Law ("NYCHRL"), N.Y. City

Admin. Code § 8-107. Plaintiff also asserts three state common law claims arising out of his

employment with Defendant: (1) unjust enrichment, (2) quantum meruit, and (3) negligent

infliction of emotional distress ("NIED"). Defendant moves to dismiss the five non-ADA claims

pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiff cross-moves to amend

the original complaint in order to add four additional causes of action and one additional

defendant, Stuart Ellert, a CTM principal. For the reasons stated below, this Court dismisses

Plaintiff's state statutory and common law claims, grants Plaintiff's cross-motion to amend in

part, and denies the cross-motion to amend in part.

I.      **Factual Background**

The following facts are taken from the original complaint, including documents, such as the relevant local union collective bargaining agreement, which are incorporated into the complaint by reference.  For purposes of deciding Defendant's motion to dismiss for failure to state a claim, the Court assumes these facts to be true and construes them in the light most favorable to Plaintiff, the non-moving party.

Plaintiff was employed by Defendant as a heating, ventilation, and air conditioning ("HVAC") worker from May 2008 through January 2011.  Compl., at ¶ 10.  During that time, HVAC workers employed by Defendant were covered by a local union collective bargaining agreement (the "CBA"), which set forth the terms and conditions of their employment.  *Id.* at ¶ 11; Affirm. in Supp. of Def.'s Mot. to Dismiss ("Pearl Affirm."), Ex. D.  The union bargaining representative was known as International Union of Operating Engineers Local 295 ("Local 295").  Pearl Affirm., Ex. D.  Plaintiff made numerous inquiries during his employment with Defendant, but Defendant consistently denied that Defendant was a "union shop."  Proposed First Am. Compl. ("Prop. Am. Compl."), at ¶¶ 16, 65.  Further, although Plaintiff claims his employment was covered by the CBA, at no time during Plaintiff's employment did Defendant offer him union membership, an omission that Plaintiff claims violated the CBA.  Compl., at ¶ 12.  Because Plaintiff was not a union member, Defendant paid him hourly wages significantly lower than those received by union employees.  *Id.* at ¶ 14.  Plaintiff was also denied union fringe benefits such as health and dental insurance, and pension contributions.  *Id.* at ¶¶ 13–14.

On or about January 25, 2011, Plaintiff requested a leave of absence for personal reasons, including alcohol counseling and rehabilitation.  *Id.* at ¶ 15.  In response, Stuart Ellert, a CTM principal, said, "Oh no, we can't have this!" or words to that effect.  *Id.* at ¶ 16.  Defendant

2

ultimately granted Plaintiff a leave of absence; soon thereafter, Plaintiff enrolled in an alcohol rehabilitation program. *Id.* at ¶¶ 18–19. However, on or about February 28, 2011, with full knowledge that Plaintiff was in treatment, Defendant terminated Plaintiff's employment. *Id.* at ¶ 20.

Before initiating the instant action, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), due to Defendant's termination of his employment. Pearl Affirm., Ex. B. Plaintiff alleged in the complaint that his alcohol problem was a disability, that Defendant terminated Plaintiff because of that disability, and that the termination constituted unlawful discrimination under the NYHRL. *Id.* On August 24, 2011, after a full investigation, the NYSDHR dismissed the complaint, finding "no probable cause" to believe that Defendant had engaged in unlawful discrimination. Pearl Affirm., Ex. C. The NYSDHR's determination was based on its finding that during Plaintiff's leave of absence, he had driven a company vehicle without authorization, despite explicit warnings to refrain from doing so and knowledge of a company policy stating that unauthorized use of a company vehicle would result in immediate dismissal. *Id.* The NYSDHR found that Plaintiff's termination was due to his unauthorized use of a company vehicle and not the result of discrimination based on disability. *Id.*

Plaintiff later received a right to sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") dated October 5, 2011; the letter adopted the findings of the NYSDHR, as described above, and informed Plaintiff of his right to sue in federal court. Compl., Ex. A. Plaintiff filed the instant action on January 9, 2012.

## II.    Applicable Law

### A. Legal Standards

#### 1.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

The Court must dismiss a claim for lack of subject matter jurisdiction under Rule

12(b)(1) when it lacks the statutory or constitutional power to adjudicate it. *Makarova v. United*

*States*, 201 F.3d 110, 113 (2d Cir. 2000). "[J]urisdiction must be shown affirmatively, and that

showing is not made by drawing from the pleadings inferences favorable to the party asserting

it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). The party asserting

subject matter jurisdiction has the burden of proving its existence by a preponderance of the

evidence. *Makarova*, 201 F.3d at 113. In determining whether subject matter jurisdiction exists,

"courts are permitted to look to materials outside the pleadings, including affidavits." *J.S. v.*

*Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

#### 2.   Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the

claims liberally, "accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147,

152 (2d Cir. 2002). To survive a motion to dismiss, each claim must set forth sufficient factual

allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). The Court need not credit "legal conclusions" in a claim or

"threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678)

(internal quotations and alteration omitted).

4

When determining the sufficiency of a claim under Rule 12(b)(6), the Court may consider only the allegations on the face of a pleading. Nevertheless, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). The Court may consider documents outside of the pleading if the documents are integral to the pleading or subject to judicial notice. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.").

### 3. Motion for Leave to Amend Under Fed. R. Civ. P. 15(a) and 21

Leave to file an amended complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Ruse-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). While granting leave to amend is generally favored, "it is within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Life. Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).

A proposed amendment is futile if it "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, a court must deny a motion to amend if it does not contain enough factual allegations, accepted as true, to state a claim for relief that is "plausible on its face." *Riverhead Park Corp. v. Cardinale*, 881 F. Supp. 2d 376, 379 (E.D.N.Y. 2012) (Spatt, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (denying motion to add claims for malicious prosecution as futile); *see*

*also Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 202–03 (E.D.N.Y. 2012) (Dearie,

J.) (denying motion to add new claims and a new defendant as futile); *Scottrade, Inc. v. BroCo*

*Investments, Inc.*, 774 F. Supp. 2d 573, 584 (S.D.N.Y. 2011) (Holwell, J.) (denying motion to

add claims for securities fraud as futile).

To the extent a proposed amendment would add new parties, the motion is governed by

Rule 21, which states, "the court may at any time, on just terms, add or drop a party." Fed. R.

Civ. P. 21; *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011) (Spatt, J.). In

practice, the standard for deciding whether to allow the addition of defendants is "the same

standard of liberality afforded to motions to amend pleadings under Rule 15." *Addison*, 283

F.R.D. at 79 (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (Tenney, J.)).

## B.    Preemption Under Section 301 of the LMRA

Defendant argues that many of Plaintiff's state law claims are preempted by Section 301

of the Labor Management Relations Act ("LMRA"). Mem. of Law in Supp. of Def.'s Mot. to

Dismiss at 2–7 ("Def.'s Mem."). "Section 301 governs claims founded directly on rights created

by collective-bargaining agreements, and also claims that are 'substantially dependent on

analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394

(1987). Section 301 of the LMRA provides, in pertinent part:

> Suits for violations of contracts between an employer and a labor organization[1]
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the parties, without respect to the
> amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

---

[1] Although Section 301 refers to contracts between employers and labor organizations, parties to a suit under Section 301 may include individual employees asserting rights under a labor contract, such as Plaintiff. *See, e.g., Vera v. Sacks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (Section 301 preempted state law claim brought by individual union member).

The Supreme Court has held that the doctrine of "complete pre-emption" applies "primarily in cases raising claims pre-empted by § 301 of the LMRA." *Caterpillar*, 482 U.S. at 393. Under this doctrine, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

The Supreme Court has articulated the principle of Section 301 preemption as follows: "if the resolution of a state-law claim depends upon the meaning of a [CBA], the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988). Put another way, state law claims arising out of allegations of breach of contract or tort liability are preempted by Section 301 if they are "inextricably intertwined with consideration of the terms of [a] labor contract." *Wall v. Const. & General Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir. 2000). "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or [be] dismissed as pre-empted by federal labor-contract law." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) ("*Vera I*") (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

However, the Supreme Court has cautioned that state law claims involving mere consultation of a CBA, rather than interpretation of a CBA, do not lead to Section 301 preemption. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Thus, actions to enforce state law rules or obligations that are independent of a CBA would not be preempted by Section 301. *Vera I*, 335 F.3d at 115. "Nor would a state claim be preempted if its application required mere

7

referral to the CBA for 'information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" *Id.* (quoting *Lingle*, 486 U.S. at 413 n.12). Ultimately, it is "the legal character of a claim, as independent of rights created under the [CBA], that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123–24 (citations and quotation marks omitted).

### III.   Discussion

#### A.  Plaintiff's Unjust Enrichment and Quantum Meruit Claims Are Preempted

Counts IV and V of Plaintiff's original complaint assert claims for unjust enrichment and quantum meruit. Compl., at ¶¶ 40–49. Under New York law, Plaintiff's unjust enrichment and quantum meruit claims may be analyzed as a single quasi-contractual claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991) (Mukasey, J.) ("quantum meruit and unjust enrichment are not separate causes of action"), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992)). Thus, while the elements of Plaintiff's unjust enrichment and quantum meruit claims are distinct, for all intents and purposes, the claims are indistinguishable.

Under New York law, a party claiming unjust enrichment must establish three elements: "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2d Cir. 2001). A claimant seeking to recover in quantum meruit under New York law must prove four elements: "the performance of services in good faith, (2) the acceptance of the

services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Leibowitz*, 584 F.3d at 509.

Plaintiff's unjust enrichment claim states that Defendant was obligated to pay Plaintiff "prevailing union wages including supplementary benefits" "[a]s a result of" "a union contract in place for [Defendant's] employees." Compl., at ¶¶ 41–42. Despite this obligation, Plaintiff claims that Defendant "failed to properly pay the full required compensation to [P]laintiff." Compl. at ¶ 44. As a result, Plaintiff alleges that Defendant was unjustly enriched at the expense of Plaintiff because Defendant was compensated by its clients "as though it had properly paid the appropriate prevailing wages to [P]laintiff." *Id.* at ¶¶ 43–44. Plaintiff seeks "unpaid prevailing wages, supplemental benefits, liquidated damages" and related relief for his unjust enrichment claim. *Id.* at ¶ 45. Plaintiff's quantum meruit claim states that although he "performed valuable work, labor and services" for Defendant, he was not fully compensated for his labor. *Id.* at ¶¶ 47–48. Similar to his claim for unjust enrichment, Plaintiff seeks "unpaid compensation" and related relief for his quantum meruit claim.

To resolve Plaintiff's quasi-contract claims, the Court would not simply need to consult the wages and benefits schedules of the CBA. Mere consultation of a CBA's economic benefits provisions would not require preemption. *Vera I*, 335 F.3d at 115. Instead, by claiming entitlement to the wages and benefits listed in the CBA, Plaintiff has implicitly pled that he falls within the eligibility provisions of Article I of the CBA. Hence, the Court would need to determine whether Plaintiff performed bargaining unit work, defined by the CBA as "installations, maintenance and service and alterations in air-conditioning, refrigeration, heating, plumbing and ventilation in unlimited tonnage." Pearl Affirm., Ex. D. While these "terms are relatively straightforward, it is true nonetheless that resolution of the state law claims is

substantially dependent upon analysis of the terms of the [CBA]." *Gorodkin v. Q-Co. Indus., Inc.*, 89-cv-8033, 1992 WL 122769, at *12 (S.D.N.Y. May 27, 1992) (McKenna, J.) (quoting *Allis-Chalmers*, 471 U.S. at 211) (dismissing fraud claim as preempted by LMRA because "[a]ssessing plaintiff's claim that he should have been afforded the wages and benefits of a full-time 'technician' requires the Court to look to the terms of the [CBA] which define which employees are eligible to receive what measure of wages and benefits") (quotation marks and internal editing omitted).

The Court finds that Plaintiff's quasi-contract claims are preempted by the LMRA. It is clear that the unjust enrichment and quantum meruit claims hinge on rights created by the CBA. Both claims boil down to the assertion that Defendant did not adequately compensate Plaintiff for his work. Yet Plaintiff presents no basis for his claim that Defendant short-changed him other than the assertion that he was eligible, pursuant to the CBA, to receive prevailing union wages and benefits. Indeed, the unjust enrichment claim explicitly states that Defendant was obligated to pay Plaintiff "prevailing union wages including supplementary benefits" "*[a]s a result of*" "a union contract in place for [Defendant's] employees," and Plaintiff's demands for unpaid wages and other compensation necessarily refer to the CBA. Compl., at ¶¶ 41–42, 45, 49 (emphasis added). In analyzing whether Defendant failed to pay Plaintiff certain wages or benefits to which Plaintiff was entitled under either unjust enrichment or quantum meruit, the Court would be required to interpret the eligibility provisions listed in Article I the CBA.[2] If Plaintiff did not perform bargaining unit work as defined in Article I of the CBA, then he was

---

[2] Article I of the CBA designates the union as the "sole and exclusive collective bargaining agent" for all of Defendant's employees engaged in bargaining unit work, defined as "installations, maintenance and service and alterations in air-conditioning, refrigeration, heating, plumbing and ventilation in unlimited tonnage . . . ." Pearl Affirm., Ex. D. Article VI of the CBA states that "[s]hould an employee *covered* by this agreement be receiving less than the minimum rate set forth thereon at the signing of the agreement, he shall immediately be brought up to such rate." *Id.* (emphasis added). Article VII sets forth a schedule of payments that Defendant agrees to pay to the Welfare Fund Local 295 and the Pension Fund Local 295 ("the Funds") on behalf of all employees performing bargaining unit work. *Id.*

not covered by the CBA and therefore has no basis for quasi-contractual relief under the CBA. In short, Plaintiff's quasi-contract claims are "inextricably intertwined" with consideration of the eligibility terms of the CBA. *Wall*, 224 F.3d at 178.

Because Plaintiff's quasi-contract claims are "inextricably intertwined" with the terms of the CBA, they must be either treated as § 301 claims or dismissed as preempted by federal labor law. *Wall*, 224 F.3d at 178; *Vera I*, 335 F.3d at 114. For the remainder of this memorandum and order, the Court will treat Plaintiff's quasi-contract claims as § 301 claims

### 1.  Failure to Exhaust the CBA's Grievance and Arbitration Procedures

Even treating Plaintiff's quasi-contract claims as federal claims falling under the LMRA, *see Vera I*, 335 F.3d at 114, Defendant argues those claims should still be dismissed because Plaintiff failed to avail himself of the grievance and arbitration provisions contained in the CBA.[3] To bring a claim under Section 301 of the LMRA, an employee must "at least attempt to exhaust exclusive grievance and arbitration procedures established by the [CBA]." *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x 127, 130 (2d Cir. 2005) (quoting *Vaca v. Sipes*, 386 U.S. 171, 184 (1967)).

There are three recognized exceptions to the exhaustion requirement: "(1) where the employer has repudiated private grievance mechanisms; (2) where the union has breached its duty of fair representation; or (3) where the union member shows that arbitration would be futile." *Vera v. Saks*, 208 F. App'x 66, 68 (2d Cir. 2006) ("*Vera II*") (citations omitted). None of these exceptions applies here. First, Plaintiff has not alleged that Defendant repudiated the arbitration provisions of the CBA. Second, Plaintiff has not alleged that Local 295 breached its

---

[3] Article XVII of the CBA contains an arbitration clause that requires "[a]ll complaints, disputes and grievances arising between the parties to the Agreement involving questions of interpretation or application of any clause of this Agreement, or any act or conduct in relation thereto be resolved by binding arbitration." Pearl Affirm., Ex. D. The breadth of this provision encompasses Plaintiff's quasi-contract claims.

duty of fair representation. And third, Plaintiff has not shown or argued that arbitration would be futile. Because none of the recognized exceptions to the exhaustion requirement applies, Plaintiff's unexhausted quasi-contract claims, viewed as claims brought under § 301 of the LMRA, must be dismissed.

Plaintiff argues the exhaustion requirement should be waived because Defendant intentionally kept Plaintiff in the dark regarding the existence of the union and the CBA. Pl.'s Opp. at 4. However, withholding information regarding a union from an employee is not a recognized exception to the exhaustion requirement. Plaintiff cites *Williams v. United Auto Workers Local 501, AFL-CIO* for the proposition that a plaintiff need not exhaust contractual arbitration remedies where a plaintiff is frustrated from gaining information regarding the union. 841 F. Supp. 499 (W.D.N.Y. 1993) (Curtin, J.). Plaintiff's reliance on *Williams* is misplaced. The court in *Williams* excused the plaintiff's failure to exhaust intra-union appeal remedies provided not by a CBA, but by the union constitution. *Williams*, 841 F. Supp. at 502. In doing so, the court cited *Clayton v. Int'l Union, UAW*, a Supreme Court case that explicitly distinguished between contractual grievance and arbitration procedures and internal union procedures. 451 U.S. 679 (1981). The *Clayton* Court emphasized that exhaustion of contractual grievance procedures was "intended to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of collective-bargaining agreements." *Clayton*, 451 U.S. at 687 (citation omitted). In contrast, a requirement that an aggrieved employee exhaust internal union procedures created by a union constitution and nowhere mentioned in his CBA would not "further national labor policy." *Id.*

Moreover, though Plaintiff was unaware that Defendant was a "union shop" during his employment with Defendant, he learned of that fact in May 2011, just a few months after his termination. Prop. Am. Compl., at ¶ 24. Nothing in the record suggests that he could not have utilized available arbitration procedures after he learned of the union's existence and before filing the instant suit. Exceptions to the exhaustion requirement are limited to situations where forcing a plaintiff to exhaust arbitration and grievance procedures would not "protect the integrity of the collective-bargaining process [or] . . . further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of collective-bargaining agreements." *Clayton*, 451 U.S. at 687.

Here, requiring Plaintiff to exhaust the contractual remedies of the CBA would protect the integrity of the CBA, the very document upon which Plaintiff bases most of his claims. Accordingly, even reading Plaintiff's unjust enrichment and quantum meruit claims to state a cause of action under Section 301 of the LMRA, they nonetheless must be dismissed for failure to exhaust arbitration and grievance remedies. *See Campbell*, 144 F. App'x at 130 (to bring a claim under Section 301 of the LMRA, an employee must "at least attempt to exhaust exclusive grievance and arbitration procedures established by the [CBA]"). However, the Court dismisses Plaintiff's quasi-contract claims without prejudice, subject to Plaintiff pursuing the available contractual remedies of the CBA. While Plaintiff's quasi-contract claims, treated as § 301 claims, are not properly before this Court at this time, nothing precludes Plaintiff from renewing the claims if the arbitration and grievance procedures of the CBA do not accord him adequate relief.

### B. Plaintiff's Negligent Infliction of Emotional Distress Claim Is Preempted

Count VI of the complaint asserts a claim for NIED. Compl., at ¶¶ 50–53. Plaintiff alleges that Defendant negligently inflicted emotional distress on him by "unlawfully discriminating" against him. *Id.* at ¶ 52. To state a claim for NIED in New York, a plaintiff must adequately plead four elements: (1) breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134–35 (E.D.N.Y. 2010) (Seybert, J.) (citations omitted).

The complaint's only allegations relating to discrimination concern Plaintiff's termination.[4] Plaintiff concedes that he was an at-will employee of Defendant. Compl., at ¶ 10. Under an at-will employment agreement, "[a]n employer has the right to terminate employment at will at any time and for any reason or no reason, except as that right may have been limited by express agreement with the employee or in a collective bargaining agreement of which the employee is a beneficiary." *O'Connor v. Eastman Kodak Co.*, 65 N.Y.2d 724, 725 (1985).

The CBA governed the terms of whether and how Defendant could terminate Plaintiff. The CBA contains a "Discharge Clause" at Article IX, which reads, in pertinent part: "The Employer shall have no right to immediate discharge of any employee after his probationary period except for dishonesty, theft, drunkenness or assault." Pearl Affirm., Ex. D. The provision also provides for a grievance process, as well as arbitration in the event the parties cannot come to an informal resolution. *Id.*

---

[4] To the extent Plaintiff hinges his NIED claim on allegations that Defendant failed to compensate Plaintiff in accordance with the CBA, the claim is preempted by the LMRA and dismissed for the same reasons the quasi-contract claims were preempted and dismissed.

Because Plaintiff was an at-will employee, Defendant had the right to fire Plaintiff for any reason or for no reason, except as that right may have been limited by the CBA. *See O'Connor*, 65 N.Y.2d at 725. Therefore, in resolving Plaintiff's NIED claim, the Court would have to consider whether Plaintiff's termination was permissible under the terms of Article IX of the CBA. Because that inquiry would be "inextricably intertwined" with the terms of the CBA, Plaintiff's NIED claim is preempted by the LMRA and is therefore dismissed. *See Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 154 (S.D.N.Y. 2006) (Koeltl, J.) (finding negligent termination claim was preempted by LMRA due to CBA's just-cause termination provision).

## C.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Under the NYHRL and NYCHRL

Counts II and III of the complaint assert claims for disability discrimination pursuant to the NYHRL and the NYCHRL, respectively, arising from the termination of Plaintiff's employment with Defendant. Compl., at ¶¶ 28–38. The NYHRL provides a right of action against unlawful discriminatory practices, including employment discrimination. N.Y. Exec. Law §§ 297(9), 291(1). The NYHRL reads, in pertinent part, as follows:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights.

N.Y. Exec. Law § 297(9). The NYCHRL provides a similar right of action and is worded almost identically to the NYHRL. N.Y.C. Admin. Code § 8-502(a). "Thus, by the terms of the statute and code, respectively, the NYHRL and [NYCHRL] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002); *see also Williams v. City of N.Y.*, 12-cv-131, 2013 WL 93172, at *2 (S.D.N.Y. Jan. 8, 2013) (Gardephe, J.) ("[B]oth the NYSHRL and the

NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with *either* the [NYSDHR] or the [Equal Employment Opportunity Commission]."). "Furthermore, once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York." *Id.* (citing N.Y. Exec. Law § 298). Plaintiff failed to appeal the adverse ruling of the NYSDHR to the New York Supreme Court and instead attempted to relitigate his claims in this Court, contrary to the statutory schemes detailed above. *Id.*

The election-of-remedies provisions in the NYHRL and NYCHRL foreclose a litigant who has already filed an administrative complaint with the NYSDHR from pursuing a lawsuit in either state or federal court on the same set of facts. "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." *Williams*, 2013 WL 93172, at *2 (citing *York*, 286 F.3d at 127). In the case at bar, there is no dispute that Plaintiff filed a claim of disability discrimination with the NYSDHR in early March 2011. Pearl Affirm., Ex. B. On August 24, 2011, the NYSDHR dismissed the complaint on the merits. Pearl Affirm., Ex. C. Therefore, "the election of remedies doctrine bars this court from considering [Plaintiff's] [NYHRL and NYCHRL] claims." *McDonald v. City of New York*, 786 F. Supp. 2d 588, 616 (E.D.N.Y. 2011) (Matsumoto, J.). Plaintiff's NYHRL and NYCHRL claims are dismissed for lack of subject matter jurisdiction. *See Jackson v. New York State Dep't of Labor*, 709 F. Supp. 2d 218, 226 (S.D.N.Y. 2010) (Marrero, J.).

### D. Plaintiff's Motion for Leave to Amend is Granted in Part and Denied in Part

Plaintiff seeks leave to amend the original complaint in order to add four new causes of action and one new defendant: Stuart Ellert. The first two additional causes of action, leveled against Defendant, are for (1) breach of the CBA, and (2) breach of obligations under the

16

Employee Retirement Income Security Act of 1974 ("ERISA"). Prop. Am. Compl., ¶¶ at 47–58.
The other two proposed causes of action, leveled against Ellert, are for (1) breach of fiduciary
duty, and (2) misrepresentation and fraud. *Id.* at ¶¶ 59–71. As explained more fully below, the
Court grants Plaintiff's motion for leave to amend to add a claim of fraudulent misrepresentation
against Stuart Ellert. The Court denies the rest of Plaintiff's motion to amend as futile because
the remaining proposed amendments would not withstand a Rule 12(b)(6) motion to dismiss.

### 1.  Proposed Count V: Breach of CBA

Plaintiff's proposed claim against Defendant for breach of the CBA is nearly identical to

the original quasi-contract claims; it alleges that Defendant was bound by the CBA throughout

the duration of Plaintiff's employment with Defendant, that Defendant was required to pay

certain financial contributions to Local 295 on Plaintiff's behalf, and that Defendant failed to do

so. *Id.* at ¶¶ 48–51. Like the claims for unjust enrichment and quantum meruit, the proposed

claim for breach of the CBA is "inextricably intertwined" with the CBA and would "require the

court to interpret the terms or legal consequences of a breach of the agreement." *Duran v.*

*Jamaica Hosp.*, 216 F. Supp. 2d 63, 69 (E.D.N.Y. 2002) (Garaufis, J.). Indeed, the proposed

claim is not only "inextricably intertwined" with the CBA—it is also a direct claim for breach of

the CBA. For the same reasons that applied to the quasi-contract claims, the claim for breach

would not survive a Rule 12(b)(6) motion to dismiss. To the extent Plaintiff styles this claim as

a common law breach of contract claim, it is preempted by the LMRA. *See Vera I*, 335 F.3d at

114. And to the extent Plaintiff styles this claim as one brought under Section 301 of the LMRA,

it would be dismissed without prejudice for failure to exhaust the grievance and arbitration

procedures in the CBA. *See Campbell*, 144 F. App'x at 130. However, although the Court

denies Plaintiff's motion for leave to add a claim for breach of the CBA as futile, the Court

encourages Plaintiff to pursue arbitration according to the terms of the CBA.  If such arbitration should prove unsuccessful, Plaintiff may seek leave to amend to add a Section 301 claim for breach of the CBA.

### 2.  Proposed Count VI:  Breach of ERISA Obligations

The proposed cause of action against Defendant for breach of ERISA obligations also fails to state a claim.  Plaintiff alleges that Defendant violated Section 515 of ERISA by failing to make required "fringe benefit contributions in accordance with the terms and conditions of the applicable CBA."  Prop. Am. Compl., at ¶ 54.  Article VII of the CBA lays out the schedule of payments Defendant was obligated to make to the Funds.  Pearl Affirm., Ex. D.  However, Section 502(g)(2) of ERISA, which relates to awards in actions involving delinquent contributions, explicitly states that any unpaid contributions, interest, liquidated damages or attorney's fees are to be awarded to the relevant ERISA plan itself, not the individual participant. 29 U.S.C. § 1132(g)(2).  As such, a participant[5] in an ERISA plan does not have standing to sue on his own behalf for delinquent contributions; he must sue derivatively on behalf of the fund. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 916 (2d Cir. 1989).

The proposed amended complaint makes clear that Plaintiff seeks to recover personally for Defendant's alleged violation of its ERISA obligations.  Prop. Am. Compl. at 15.  Because Plaintiff is not entitled to such relief under Section 502(g)(2) of ERISA, the proposed amendment is futile.  However, even if the Court were to construe the proposed amendment as one seeking to sue derivatively, the amendment would still be futile because "an individual

---

[5] "ERISA defines a 'participant' as 'any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan.'  29 U.S.C. § 1002(7).  The Supreme Court has explained that '[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.' *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989)." *Coan v. Kaufman*, 457 F.3d 250, 255–56 (2d Cir. 2006).  Because Plaintiff's status as a "participant" under ERISA is a question of statutory standing, the Court may assume such standing for the purpose of determining whether Plaintiff otherwise has a viable cause of action. *Id.* at 256.

beneficiary may not sue derivatively under ERISA unless he first establishes that the trustees

breached their fiduciary duties." *Martinez v. Barasch*, 01-cv-2289, 2005 WL 2465493, at *2

(S.D.N.Y. Oct. 5, 2005) (Mukasey, J.) (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874

F.2d 912, 916 (2d Cir. 1989)).  Plaintiff has not alleged any facts suggesting that the trustees of

the Funds breached their fiduciary duties.  As a result, the proposed amendment fails to state a

claim and must be rejected as futile. *See Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 80

(2d Cir. 1986) (affirming district court's dismissal of derivative ERISA claim because plaintiff

"failed to establish that the employer-appointed trustees breached their fiduciary duty").

### 3.  Proposed Count VII:  Breach of Fiduciary Duty

Plaintiff seeks leave to amend the original complaint in part to add Stuart Ellert as a

defendant.  According to the proposed amended complaint, Ellert was the Chairman and CEO of

CTM during Plaintiff's tenure with Defendant.  The first proposed cause of action against Ellert

is for breach of fiduciary duty.  Plaintiff alleges that Ellert, as his employer, "had a duty to

[Plaintiff] to make fringe benefit payments and provide other financial considerations on behalf

of [Plaintiff] to Local 295" but that Ellert failed to do so. Prop. Am. Compl., at ¶¶ 60–62.

Plaintiff has not specified the precise basis for his claim that Ellert owed him a fiduciary

duty.  To the extent Plaintiff's proposed breach of fiduciary duty claim might be read to arise out

of any common law fiduciary duty, it is preempted by ERISA.  Section 514 of ERISA provides

that the statute's provisions "supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan." *Harrison v. Metro. Life Ins. Co.*, 417 F. Supp. 2d

424, 431 (S.D.N.Y. 2006) (Marrero, J.) (dismissing state breach of fiduciary duty claim as

preempted by ERISA).  Any state law claim that "duplicates, supplements, or supplants the

ERISA civil enforcement remedy conflicts with the clear congressional intent to make the

19

ERISA remedy exclusive and is therefore pre-empted." *Id.* (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). ERISA preemption extends to any state law cause of action that aims to "recover benefits due to [the plaintiff under the terms of the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Lupo v. Human Affairs, Int'l, Inc.*, 28 F.3d 269, 272 (2d Cir. 1994). Plaintiff's proposed breach of fiduciary duty claim seeks to recover benefits and to enforce rights under ERISA-governed plans. Therefore, the proposed claim is preempted under ERISA and must be rejected as futile. *See Harrison*, 417 F. Supp. 2d at 432.

To the extent Plaintiff styles his proposed breach of fiduciary duty claim to be one arising directly under ERISA, the Court nevertheless rejects the claim as futile. While ERISA permits an employer to function as a fiduciary, it does so only to the extent that the employer "exercises any discretionary authority or discretionary control respecting management of the plan," "exercises any authority or control respecting management or disposition of [the plan's] assets," or has "discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The Second Circuit has explained that management or disposition of ERISA plan assets "refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on." *Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (citation omitted). In *LoPresti v. Terwilliger*, the Second Circuit held that even where an individual was (1) an officer of a company, (2) was "authorized to sign checks on the Company's account," and (3) "had some general knowledge that deductions were made from employees' wages," he still was not an ERISA fiduciary because he had "no responsibility for determining which of the company's creditors would be paid or in what order." 126 F.3d 34, 40 (2d Cir. 1997).

Here, Plaintiff has not alleged any facts showing that Ellert managed or administered the Funds in any way. Plaintiff has not alleged that Ellert "select[ed] investments" or "exchang[ed] one instrument for another." *Finkel*, 557 F.3d at 86. Nor has Plaintiff alleged that Ellert was responsible "for determining which of the company's creditors would be paid or in what order." *LoPresti*, 126 F.3d at 40. Given that Ellert is the President and/or Chief Executive Officer of Defendant, Plaintiff may be able to plead such facts in a future amended complaint. But the Proposed Amended Complaint does not sufficiently allege Ellert engaged in activities that would make him a fiduciary under ERISA's definition of that term. Because Plaintiff has presented no facts suggesting that Ellert was an ERISA fiduciary, his proposed claim for breach of fiduciary duty under ERISA is not viable.

The proposed amendment for breach of fiduciary duty, whether at common law or under ERISA, is denied as futile.

### 4. Proposed Count VIII: Misrepresentation and Fraud

The second proposed cause of action against Ellert is for misrepresentation and fraud. Under New York law, a claim for fraud requires five elements: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370 (N.Y. 1996)). Plaintiff alleges that despite numerous inquiries during his employment with Defendant, Ellert consistently denied that Defendant was a "union shop." Prop. Am. Compl., at ¶¶ 16, 65. Plaintiff also alleges that Ellert knew these misrepresentations to be untrue and "intended to cause and induce [Plaintiff] to believe that he was being compensated adequately for his work,

21

not entitled to fringe benefits through Local 295 and the CBA, nor had other rights through Local 395 and the CBA." *Id.* ¶¶ 66–67. Lastly, Plaintiff claims that he reasonably relied on these misstatements, causing injury to himself. *Id.* ¶¶ 68–70. Having satisfied all of the elements of a claim for fraudulent misrepresentation, Plaintiff has adequately pled a fraud claim against Ellert.

Defendant argues that the proposed fraud claim concerns "Defendant's duties and obligations under the CBA" and is therefore preempted by the LMRA. Reply Mem. of Law in Further Supp. of Def.'s Mot. to Dismiss at 9. However, at this preliminary stage of the litigation, the Court is unable to conclude as a matter of law that Plaintiff's proposed claim for fraudulent misrepresentation is preempted by the LMRA. The parties have yet to engage in discovery. After developing a factual record, Plaintiff may be able to assert a fraud claim that seeks to vindicate rights independent of the CBA. Accordingly, the Court will grant Plaintiff's motion to amend the complaint to add a claim of fraudulent misrepresentation against Stuart Ellert.

## IV.   Conclusion

Plaintiff's state common law claims for unjust enrichment, quantum meruit, and negligent infliction of emotional distress are dismissed without prejudice as preempted by the LMRA and for failure to exhaust the grievance remedies required under the CBA. Plaintiff's proposed claim for breach of the CBA is also rejected as futile. The Court directs Plaintiff to pursue and exhaust available arbitration and grievance procedures under the CBA prior to reasserting his quasi-contract claims, read as claims under Section 301 of the LMRA, or seeking leave to amend to add a claim under the LMRA for breach of the CBA.

The Court dismisses Plaintiff's state statutory claims for violations of the New York State Human Rights Law and the New York City Human Rights Law with prejudice. Plaintiff's

proposed claims for breach of ERISA obligations and breach of fiduciary duty are rejected as

futile and dismissed with prejudice.

Finally, the Court grants Plaintiff's motion to amend with respect to the fraudulent

misrepresentation claim and the addition of Ellert as a defendant. The parties are directed to

proceed with discovery on all outstanding issues.

**<u>SO ORDERED</u>**

Dated: Brooklyn, New York
       March 27, 2013

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge